IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DESMOND DEAN WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-556-AMG |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Desmond Dean Walls ("Plaintiff") brings this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381. (Doc. 1).[1] The Commissioner filed the Administrative Record (Doc. 7), and the parties have fully briefed the issues. (Docs. 8, 10). The parties have consented to proceed before the undesigned Magistrate Judge under 28 U.S.C. § 636(c)(1). (Docs. 4-5). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

**I.     The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the

claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At Step Two, the Commissioner evaluates any mental impairments using the "paragraph B criteria," comprised of four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Social Security Ruling 96-8P, 1996 WL 374184; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the Social Security Administration's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "[a]n agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

## II.     Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income on April 6, 2022, alleging a disability of onset date of January 17, 2022. (AR, at 228-240). The Social Security Administration denied the applications initially and on reconsideration. (*Id.* at 109-18, 126-34). Then an administrative hearing was held on June 9, 2023. Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 38-66). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III.    The Administrative Decision

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 17, 2022, the alleged onset date. (AR, at 21). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of hypertension, diabetes with neuropathy and retinopathy, degenerative joint disease of the left hip, and degenerative disc disease of the thoracolumbar spine. (*Id.*) At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any listed impairment. (*Id.* at 24).

The ALJ then determined Plaintiff had the RFC to perform less than the full range of light work, with the following further limitations: Plaintiff can lift, carry, push, or pull up to twenty pounds occasionally and ten pounds frequently; can sit for six hours and stand or walk for six hours in an eight-hour workday; can occasionally operate foot controls bilaterally; can occasionally balance, stoop, kneel, or climb ramps and stairs; can never

crouch, crawl, or climb ladders, ropes, or scaffolds; can never work at unprotected heights; and can tolerate occasional exposures to operating motor vehicles, vibration, and extreme cold. (*Id.* at 25).

Finally, at Step Four, the ALJ found Plaintiff could perform his past relevant work as a fast-food manager or fast-food worker, with an alternative finding at Step Five that Plaintiff could otherwise perform other jobs that exist in significant numbers in the national economy. (*Id.* at 29-30). Thus, the ALJ found Plaintiff had not been under disability from January 17, 2022, through November 6, 2023. (*Id.* at 31).

## IV.   Claims Presented for Judicial Review

Plaintiff contends the ALJ: (1) erred by finding the prior administrative medical findings of state agency psychological consultants Debby Doughty, Ph.D., and Brian Snider, Ph.D., unpersuasive; and (2) failed to provide a sufficiently detailed mental RFC assessment. (Doc. 8). The Commissioner asserts Plaintiff's claims are without merit. (Doc. 10). The Court agrees.

## V.   Analysis

### A.   Relevant Background

State agency psychological consultants Dr. Doughty and Dr. Snider found Plaintiff's depression to be a severe impairment. (AR, at 69-70, 78-79, 89-91, 101-02). Both psychological consultants made mental RFC determinations. (*Id.* at 73-74, 82-83, 94, 106).

The ALJ, however, found Plaintiff's depression to be a non-severe impairment at Step Two. (*Id.* at 22); (*see also id.* at 24 ("Because the claimant's medically determinable

6

mental impairments cause no more than 'mild' limitation in any of the functional areas, and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe.") (citing 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1))). The ALJ found Dr. Doughty's and Dr. Snider's assessments to be "not persuasive" because "the mental health record and other evidence of record reflects nothing beyond mild limitations" in the "paragraph B" functional areas. (*Id.* at 28). Instead, the ALJ relied heavily on the findings of consultative examiner Dr. Kara Rodgers and the minimal mental health treatment Plaintiff sought. (*Id.* at 23-24).

Dr. Rodgers made a provisional diagnosis of "Major Depressive Disorder, Recurrent, Moderate, with Anxious Distress R/O Specific Learning Disorder R/O Intellectual Disability." (*Id.* at 377). But she also described Plaintiff's mental status examination as "unremarkable" and noted he was not receiving any outpatient mental health treatment or taking any psychotropic medications. (*Id.* at 376). The ALJ summarized Dr. Rodgers's findings as follows:

> During the claimant's July 2022 consultative examination with Dr. Kara Rodgers, the claimant reported a family history of mental illness and poor grades in school. He reported a history of mood problems since he was young but denied any history of mental health treatment.
>
> His affect appeared flat, and he reported being generally depressed. He stated that he spends most days watching television at home, occasionally getting out to see family. He reported sleep difficulties and feeling tired, lethargic, and irritable most days. He endorsed poor motivation and he [sic] no longer finding pleasure in things he once enjoyed. He denied any current suicidal or homicidal ideation. He also endorsed anxiety, specifically worry and stress anxiety. He said his anxiety can make him restless or fidgety and keep him awake at night. During the exam, the claimant was cooperative throughout. His speech evidenced no problems, and he appeared to have no difficulty expressing his thoughts clearly. He endorsed a history of

7

> experiencing visual hallucinations but did not evidence any signs of a thought disorder or psychotic process. He further denied any symptoms of bipolar disorder. His mental status exam was unremarkable in that he was fully oriented, identified common objects, accurately added three single digits, followed a 3-stage command, demonstrated good working memory, was able to abstractly reason and had good social judgment. He evidenced the ability to tract [sic] the course and flow of the exam, concentrate, focus, and display an adequate fund of knowledge. He did not demonstrate any significant problems with concentration or focus, or any other cognitive problems that would cause him difficulty in understanding, remembering, and following through with tasks or instructions.
>
> In sum, the claimant has generally sought minimal mental health treatment, if any. He has reported few symptoms during the relevant period. The record is free of any significant or persistent mental abnormalities noted by treatment providers, and the consultative examination is largely consistent with this, noting few significant abnormalities beyond the claimant's affect and endorsed mood. Without other evidence of record sufficiently corroborating the claimant's allegations or endorsements of mental limitation, I find the evidence to reflect only mild limitations in the four broad areas of mental functioning.

(*Id.* at 23-24) (internal citations omitted). The ALJ noted that "Dr. Rodgers's examination was by far [the] most detailed evaluation of the claimant's mental status in the record." (*Id.* at 28).

At Step Four, the ALJ imposed no mental RFC limitations. (*Id.* at 25-28). To the extent Dr. Rodgers's statement that Plaintiff "did not demonstrate any significant problems with concentration or focus, or any other cognitive problems that would cause him difficulty in understanding, remembering, and following through with tasks or instructions" was intended as an RFC assessment, the ALJ found that statement persuasive. (*Id.* at 28). And the ALJ found that "[t]he absence of any significant mental effects of [Plaintiff's] impairments aligns with the absence of mental health treatment or persistently endorsed symptoms to treatment providers." (*Id.*)

8

### B. The ALJ Properly Evaluated the Medical Evidence Concerning Plaintiff's Depression.

Plaintiff claims the ALJ failed to properly evaluate the medical evidence concerning his depression and, specifically, erred by finding Dr. Doughty's and Dr. Snider's evaluations of his depression to be inconsistent with the medical record. (Doc. 8, at 4-13).

The ALJ must decide whether a medical opinion is persuasive based on enumerated factors, the most important of which are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Supportability" examines how closely connected a medical opinion or prior administrative medical finding is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) is, the more persuasive the medical opinion(s) or prior administrative medical findings will be." *Id.* § 404.1520c(c)(1). "Consistency," on the other hand, compares a medical opinion or prior administrative medical finding to the other evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ must articulate how persuasive he finds a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(b). In so doing, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2). The ALJ's

rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In finding Dr. Doughty's and Dr. Snider's opinions unpersuasive, the ALJ noted "they supported their opinions with a notated review of the record." (AR, at 28). As for their consistency, though, the ALJ found their assessments that Plaintiff's depression constitutes a severe impairment to be unsupported by the medical record and other opinion evidence. (*Id.*) Plaintiff argues the ALJ "*never* cited any contradictory evidence and, thus, did not find they were inconsistent with any medical evidence of record." (Doc. 8, at 9). To the contrary, the ALJ explained that his consistency determination was based on "reasons explained in detail earlier in this decision." (AR, at 28). Those earlier-discussed reasons included Dr. Rodgers's clinical observations—in sum, an "unremarkable" mental status exam—and Plaintiff's reports that he "generally sought minimal mental health treatment, if any," and experienced "few symptoms during the relevant period." (*Id*. at 23-24). The ALJ also found Dr. Rodgers's assessment of Plaintiff's residual functioning to be persuasive because it "aligns with the absence of mental health treatment or persistently endorsed symptoms to treatment providers." (*Id.* at 28); *see also Page v. Kijakazi*, No. CIV-23-643-G, 2023 WL 11808596, at *6 (W.D. Okla. Dec. 18, 2023) (finding consistency determination sufficient where the ALJ found claimant's provider's opinion to be inconsistent with "other opinion evidence," including that of state agency physicians), *report and recommendation adopted*, 2024 WL 1996136 (W.D. Okla. May 6, 2024). The ALJ's rationale was "sufficiently specific," as he refers to reasons clearly enumerated earlier in the opinion. *See Oldham*, 509 F.3d at 1258.

Plaintiff argues the ALJ's reliance on his minimal mental health treatment amounted to an improper reliance on a lack of evidentiary support in the record, urging that "[t]he absence of evidence is not evidence." (Doc. 8, at 7) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993)). Plaintiff's reliance on *Thompson* is misplaced. In that case, the ALJ found the claimant could perform a full range of sedentary work, relying on "the *absence of contraindication* in the medical records," effectively shifting the Commissioner's burden to the claimant. *Thompson*, 987 F.2d at 1491. Here, however, the ALJ pointed to Plaintiff's own description of his mental health treatment: his denial during his consultative examination with Dr. Rodgers that he ever sought mental health treatment and his hearing testimony that he had been prescribed medication for anxiety and depression, with a follow-up every three months, but had never received counseling. (AR, at 23-24). This is not an absence of contraindication in the record, but rather affirmative evidence of conservative treatment. As a general matter, an ALJ may rely on conservative treatment in his consistency determination so long as he also relies on other record evidence. *E.g.*, *Mileto v. Comm'r*, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022); *Ainsworth v. Comm'r*, No. CIV-21-1192-SM, 2022 WL 3440648, at *5 (W.D. Okla. Aug. 16, 2022). And here, the ALJ extensively cited Dr. Rodgers's clinical observations about Plaintiff's demeanor and mental acuity, concluding that her "consultative examination is largely consistent" with the lack of "significant or persistent mental abnormalities noted by treatment providers." (AR, at 23-24).

Plaintiff also argues the ALJ substituted his own judgment for that of Dr. Doughty and Dr. Snider because, in finding their opinions unpersuasive, he failed to cite any medical

11

evidence that contradicted their opinions. (Doc. 8, at 9). However, the ALJ is "free to resolve evidentiary conflicts [if] there is substantial evidence to support his conclusion." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012). Here, the ALJ supported his finding with Plaintiff's description of his treatment history and Dr. Rodgers's clinical observations. (AR, at 23); (*see also* Doc. 10, at 8 n.3).

Finally, Plaintiff argues that the ALJ failed "to acknowledge or discuss that, based on [his] 'clinical presentation, reported complaints and reported/documented history,' Dr. Rodgers opined that [he] had a Major Depressive Disorder, Recurrent, that was at a moderate level of severity with anxious distress." (Doc. 8, at 8). But even though "[t]he record must demonstrate that the ALJ considered all of the evidence," he is "not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* But Dr. Rodgers's provisional diagnosis is not uncontroverted. Indeed, it is tempered by Dr. Rodgers's own clinical observations, which the ALJ extensively relied on. Nor is it significantly probative. Dr. Rodgers's diagnosis is not specifically linked to work-related limitations and so is "not significantly probative evidence the ALJ had to reject in order to find [Plaintiff] was not disabled." *Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (where treatment provider's diagnosis did not include opinion on functional limitations and claimant did not "argue[] that any of [his] conditions meets or equals a Listing (which would be relevant at step three)," the diagnosis itself is "not significantly probative"); *see also Jackson v. Kijakazi*, No. CIV-20-1017-PRW, 2021 WL 6414658, at *3-4 (W.D. Okla. Nov. 23, 2021)

12

(finding substantial evidence supported ALJ's mental RFC assessment where plaintiff claimed ALJ "overlooked her PHQ-9 scores," a subjective symptom report, because "none of these scores are linked to specific work-related limitations" and "the scores are not sufficient by themselves to determine disability or non-disability"), *report and recommendation adopted*, 2022 WL 99994 (W.D. Okla. Jan. 10, 2022).

The ALJ's evaluation of the medical evidence concerning Plaintiff's depression, specifically Dr. Doughty's and Dr. Snider's opinions, is supported by substantial evidence.

### C. The ALJ Properly Evaluated Plaintiff's RFC.

A claimant's RFC is "the most [he] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In crafting a claimant's RFC, the ALJ must consider all his medically determinable impairments, even those not deemed severe. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Plaintiff argues the ALJ erred by finding his depression was a medically determinable impairment at Step Two but failing to consider it in assessing his RFC. (Doc. 8, at 13-14). However, the ALJ did consider Plaintiff's depression, taking note of Dr. Doughty's and Dr. Snider's assessments and relying heavily on Dr. Rodgers's clinical observations and Plaintiff's history of "minimal mental health treatment." *Supra* § V.A. The ALJ omitted mental limitations from Plaintiff's RFC because a lack of "other evidence of record sufficiently corroborating the claimant's allegations or endorsements of mental limitation . . . reflect[s] only mild limitations in the four broad areas of mental functioning." (AR, at 24). This was not error.

"[T]he limitations identified in the "paragraph B" . . . criteria are not an RFC assessment," but are instead "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling 96-8P, 1996 WL 374184. In other words, a finding of mild limitations in the "paragraph B" criteria does not require that the ALJ incorporate those limitations in the subsequent RFC assessment. *See Johnson v. Berryhill*, 679 F. App'x 682, 687 (10th Cir. 2017) ("Thus, a finding that an impairment is severe at step two is not determinative of the claimant's RFC and cannot substitute for a proper step-four analysis."); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (After finding impairment at Step Two, "the ALJ still had the task of determining the extent to which those impairments . . . restricted [claimant's] ability to work."). And the ALJ's explanation of the RFC was sufficiently detailed because he incorporated "reasons explained in detail earlier in this decision." *See Nielsen v. Comm'r*, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017), as explaining, "[T]he articulation requirements in [§§ 404.1520c, 416.920c] will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review our final decision."); (*see also* Doc. 10, at 6 n.2).

The ALJ's RFC assessment is supported by substantial evidence.

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 15th day of November, 2024.

*[Signature]*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE